**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| JENNIFER MCKEOWN, | Case No. 1:15-cv-671 |
| Plaintiff, | Black, J.<br>Bowman, M.J. |
| v. | |
| CAROLYN W. COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Jennifer McKeown filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents one claim of error, which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.      Summary of Administrative Record**

On January 12, 2012 Plaintiff filed application for Disability Insurance Benefits (DIB) alleging a disability onset date of July 23, 2007, due to mental and physical impairments. (Tr. 242). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On March 25, 2014, ALJ Amelia Lombardo held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. On May 22 2014, the ALJ denied Plaintiff's applications in a

1

written decision. (Tr. 26-43). Plaintiff now seeks judicial review of the denial of her application for benefits.

Plaintiff was 45 years old at time of the Administrative hearing. (Tr. 37). She completed high school and past relevant work as an administrative assistant. (Tr. 352). She embezzled money from her previous employers and was incarcerated from 2007 through 2010. She alleges disability due to her mental impairments; namely, depression and bipolar disorder.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "right foot pain status-post two surgeries; cubital tunnel syndrome of the left elbow; degenerative disc disease of the lumbar spine; obesity; bipolar disorder; recurrent major depressive disorder; episodic mood disorder; anxiety and panic attacks without agoraphobia; obsessive compulsive behavior; post-traumatic stress disorder; and personality disorder with borderline features. (Tr. 29). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> She should be allowed to alternate between sitting and standing for approximately 1-2 minutes every 20 minutes. The claimant can occasionally climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds. The claimant can occasionally posture (i.e. balance, kneel, stoop, crouch, crawl, etc.). She needs to avoid heights and hazardous moving machinery. She is limited to simple repetitive tasks in a "low stress" work environment (i.e. meaning no fast-paced assembly line work with quotas).

(Tr. 32). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ

concluded that while Plaintiff is unable to perform her past relevant work, significant other jobs exist in the national economy that Plaintiff could perform including such jobs as housekeeping cleaner, laundry folder and mail clerk. (Tr. 42). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by improperly evaluating Plaintiff's mental impairments. Upon close analysis, I conclude that the ALJ's decision should be affirmed.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's decision is supported by Substantial Evidence**

Plaintiff argues that the ALJ's mental RFC assessment ignored the overwhelming majority of mental health opinion. Specifically, Plaintiff complains that the ALJ's RFC assessment did not properly account for all of the mental limitations found by consultative examiner Thomas Hyatt, Psy.D., and state agency reviewing psychologists Dr. Paul Tangeman, Ph.d., and Karla Voyten, Ph.D.. Plaintiff further contends that the ALJ failed to properly evaluate the opinion of Nurse Christopher Heather. Plaintiff's contentions will be addressed in turn.

*A. Factual Background and ALJ's Decision*

In July of 2012, Ms. McKeown was examined by Dr. Thomas Hyatt, Psy.D.,at the request of the Department of Disability Determination. On examination, Dr. Hyatt observed that Plaintiff appeared neatly dressed and fairly well-groomed, had no speech abnormalities, and did not appear to be in immediate distress; was lucid, oriented, and alert; had appropriate eye contact and social interaction, and was cooperative; and presented with a "generally neutral" mood and affect. Dr. Hyatt did not note any significant problems in attention and concentration, an ability to follow direction, or in insight and judgment, and found that Plaintiff had "at least average intelligence"; but

5

also indicated that Plaintiff had some deficits in short-term memory, and noted Plaintiff's reports that she felt uncomfortable in crowds and had difficulty handling stress. (Tr. 1069-71). Dr. Hyatt also noted that Plaintiff's daily activities included cleaning her apartment, managing her personal grooming and nutrition, and that Plaintiff "was generally able to manage money except when in a manic phase." (Tr. 1067-68). Dr. Hyatt diagnosed Plaintiff with bipolar disorder type II with recurrent major depressive episodes and hypomanic episodes, and panic attack. (Tr. 1070). Dr. Hyatt concluded that Plaintiff could "understand and execute simple and even moderately complex instructions," appropriately attend to conversation and instructions, and that her pace was "persistent and timely." (Tr. 1070-71).

That same month, state agency psychologist Dr. Tangeman reviewed Plaintiff's medical records and assessed her mental limitations. (Tr. 82, 84-86, 95, 97-99). Dr. Tangeman determined that Plaintiff suffered from affective disorders and anxiety-related disorders that resulted in mild limitations in daily activities, and moderate limitations in social functioning and maintaining concentration, persistence, or pace. (Tr. 82). Dr. Tangeman opined that Plaintiff should be "limited to simple work tasks that do not require rapid or consistent pace," could perform in an environment where she only had to "relate to others on a superficial level," and "retain[ed] the ability to perform routine tasks in a static work setting." (Tr. 86).

In October 2012, state agency psychologist Dr. Voyten also reviewed Plaintiff's medical records and assessed her mental limitations. (Tr. 110-11, 114-15, 125-26, 129-30). Dr. Voyten completely affirmed Dr. Tangeman's opinion. (*Compare* Tr. 114-15 *with* Tr. 84-86).

6

In assessing Plaintiff's mental RFC, the ALJ gave significant weight to Dr. Hyatt's findings that Plaintiff could perform simple tasks, had mildly impaired concentration, and Dr. Hyatt's observations that Plaintiff reported feeling uncomfortable around crowds and having difficulty handling stress." (Tr. 38, 1070-71). The ALJ explained that she gave significant weight to these parts of Dr. Hyatt's opinion to the extent they supported the ALJ's assessed RFC. (Tr. 38). The ALJ also gave Drs. Tangeman and Voyten's opinions significant weight for being consistent with substantial evidence. (Tr. 38); *see* 20 C.F.R. § 404.1527(c)(4). Thus, the Court finds no error.

B. *Dr. Hyatt*

Plaintiff argues first that the ALJ improperly discounted parts of Dr. Hyatt's findings. In this regard, Plaintiff contends that Dr. Hyatt opined that Ms. McKeown required a repetition of information to fully grasp the essential details of an orally presented story, and that she would need cues to recall information as evidenced by cognitive testing during the personal examination. Notably, although the ALJ did limit Ms. McKeown to simple and repetitive work, Plaintiff argues the ALJ failed to account for her need of constant reminder or a need for repetitive information or additional supervision.

Plaintiff further contends that the ALJ did not articulate why these limitations were being omitted, especially since Dr. Hyatt's opinions were supposedly being afforded 'significant' weight. Accordingly, Plaintiff argues that such an omission makes it impossible for a subsequent reader to properly understand how the ALJ came to the decision she did and why the residual functional capacity does not account for such limitations. *See Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) ("[T]he

7

ALJ failed to provide a 'logical bridge between the evidence on the record and his conclusion….'") (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). Plaintiff's contention lacks merit.

Here, the ALJ expressly cites to Dr. Hyatt's findings and affords significant weight to portions of his findings. As detailed above, the ALJ gave significant weight to Dr. Hyatt's findings that Plaintiff could perform simple tasks, had mildly impaired concentration, and Dr. Hyatt's observations that Plaintiff reported feeling uncomfortable around crowds and having difficulty handling stress." (Tr. 38, 1070-71). The ALJ explained that she gave significant weight to these parts of Dr. Hyatt's opinion to the extent they supported the ALJ's assessed RFC. (Tr. 38). The ALJ further noted that other aspects of Dr. Hyatts' opinions were rejected because Dr. Hyatt's findings were based upon a one-time examination and were also inconsistent with Plaintiff's daily activities. It is well established that there is no requirement that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.,* 167 Fed.Appx. 496, 508 (6th Cir.2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.,* 198 Fed.Appx. 521, 526 (6th Cir.2006). Accordingly, the undersigned finds that the ALJ's decision indicates that he properly evaluated Dr. Hyatt's findings*. See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (Even a one sentence rejection of a treating physician's opinion can be sufficient).

Furthermore, the RFC findings adequately account for Dr. Hyatt's limitations. As noted by the Commissioner, Dr. Hyatt opined that Plaintiff was unimpaired in her ability

to "understand and execute simple and even moderately complex instructions," could appropriately attend to conversation and instructions, and that Plaintiff had a "persistent and timely" pace (Tr. 1070-71), which is consistent with the ALJ's more conservative RFC finding that Plaintiff could perform "simple repetitive tasks in a 'low-stress' work environment ([]meaning no fast-paced assembly line work with quotas)," and involving no more than occasional interaction with others. (Tr. 32). Accordingly, the ALJ's decision in this regard should not be disturbed.

*C. State agency Psychologists*

Plaintiff further argues that the ALJ failed to account for various limitations opined by the state agency psychological consultants. As detailed above, Dr. Tangeman reviewed Plaintiff's medical records and assessed her mental limitations in July 2012. (Tr. 82, 84-86, 95, 97-99). Dr. Tangeman opined that Plaintiff should be "limited to simple work tasks that do not require rapid or consistent pace," could perform in an environment where she only had to "relate to others on a superficial level," and "retain[ed] the ability to perform routine tasks in a static work setting." (Tr. 86). The ALJ gave significant weight to the state agency opinions but, again, failed to account for all of their limitations. Specifically, Plaintiff contends that the ALJ failed to account for Ms. McKeown's moderate impairment in completing a normal work day or week.

Contrary to Plaintiff's assertion, the state agency physicians' RFC did not include limitations relating to Plaintiff's ability to complete a normal work day. As noted by the Commissioner, the limitations Plaintiff appears to be referencing are located on the worksheet section of the Mental RFC Form (MRFC1) the reviewers used. Notably, the form that Drs. Tangeman and Voyten used explains that "the questions [outside the

9

narrative explanation] help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation boxes." (Tr. 85, 114); see POMS DI 24510.060(B) (4) ("The discussion of all mental capacities and limitations in this section must be in narrative format.). Here, Drs. Tangeman and Voyten's narrative explanations explicitly state that Plaintiff is "limited to simple work tasks that do not require rapid or consistent pace" (*Id.*), which is consist with the ALJ's RFC finding that Plaintiff could perform "simple repetitive tasks in a 'low-stress' work environment (meaning no fast-paced assembly line work with quotas)." (Tr. 32). As such, Plaintiff's reliance on the questions the state agency reviewers used as aids is misplaced and Plaintiff's assignment of error in this regard should be overruled.

      D. *Nurse Heather*

Last, Plaintiff contends that the ALJ improperly evaluated the findings of Nurse Christopher Heather. Specifically, Plaintiff claims that "in rejecting Mr. Heather's opinion, other than noting he was not an 'acceptable medical source,' the ALJ relied on meaningless facts that did not[] detract from Mr. Heather's finding." (Doc. 9 at 11). This argument fails because the ALJ provided good reasons for her decision to discount Mr. Heather's opinion, and cited substantial evidence in support of her findings.

Mr. Heather completed a mental residual functional capacity form for Plaintiff in July 2013. (Tr. 1114-16). Mr. Heather found that Plaintiff was so severely limited that she had moderate or marked limitations in all areas of mental functioning, would miss work more than five times a month, and that the stress of a five-day work week consisting of eight-hour days would likely cause her condition to deteriorate. (Id.).

10

Under the Regulations a nurse is a not an "acceptable source" whose opinion was entitled to any special weight. (Tr. 22). See Social Security Ruling 06-03p; Social Security Ruling (SSR) 06-03p (opinions from other sources cannot establish medically determinable impairments and are not entitled to controlling weight); *Hosmer v. Comm'r of Soc. Sec.,* 2014 WL 3015733 at *10 (S.D. Ohio 2014) (opinions from nurse practitioners not entitled to the special deference afforded to opinions from treating medical sources).

Here, the ALJ assigned little weight to Mr. Heather's opinion. In so concluding, the ALJ first noted that Mr. Heather's opinion was provided on a form accompanied by very little explanation. (Tr. 39); *see Ellars v. Comm'r of Soc. Sec.*, No. 15-4039, 2016 WL 2610234, at *2 (6th Cir. May 6, 2016) ("Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings.'") (citing *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir.2011); *Smith v. Comm'r of Soc. Sec.*, No. 13–12759, 2015 WL 899207, at *14-15 (E.D. Mich. Mar. 3, 2015); and *Ashley v. Comm'r of Soc. Sec.*, No. 1:12–cv–1287, 2014 WL 1052357, at *8 n. 6 (W.D. Mich. Mar. 19, 2014)).

Furthermore, the ALJ also noted, *inter alia*, that "the evidence did not support [the] degree of limitation [Mr. Heather indicated]" in consideration of "Plaintiff's benign clinical examinations, conservative course of treatment, and her daily activities." (Tr. 39); see 20 C.F.R. § 404.1527(c)(4).

Moreover, an ALJ may reject the opinion of a nurse practitioner simply because it clashes with the opinion of an acceptable medical source like a psychologist. SSR 06-

11

03p. Such is the case here. In assessing Plaintiff's mental RFC, the ALJ gave controlling weight to the findings of Dr. Schmitgossling as well as the state agency psychological consultants all of whom determined that Plaintiff's moderate mental limitations did not preclude sustained work activity.

In sum, the undersigned finds that the ALJ reasonable assessed Nurse Heather's evaluation of Plaintiff's mental functioning, regardless of the frequency or nature of her interaction with Plaintiff.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| JENNIFER MCKEOWN, | Case No. 1:15-cv-671 |
| Plaintiff, | Black, J. |
| | Bowman, M.J. |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).